IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,      :
                      :
      v.               :
                      :    Case No.: 1:21-cr-00181 (CKK)
DANIEL RAY CALDWELL,      :
Accused.                 :

## AMENDED MOTION AND INCORPORATED MEMORANDUM IN SUPPORT FOR RECONSIDERATION OF DEFENDANT'S MOTION FOR RELEASE

Comes now, the defendant DANIEL RAY CALDWELL, by and through counsel and moves this Honorable Court to reconsider its order denying his Motion to Revoke Magistrate Detention Order. In support of which, counsel states the following:

**I. Relevant Procedural History**

On April 26, 2021, Mr. Caldwell filed an appeal of the magistrate detention order entered in this case.  (Dkt. 21).

On May 3, 2021, the government filed a memorandum in opposition to Mr. Caldwell's appeal of the magistrate detention order. (Dkt. 22).

On May 8, 2021, Mr. Caldwell filed his reply to the government's memorandum in opposition to his appeal of the magistrate detention order. (Dkt. 23).

On May 21, 2021, this Honorable Court entered an order denying Mr. Caldwell's appeal of the magistrate detention order. (Dkt. 24).  This Court further entered a memorandum opinion. (Dkt. 25).

Mr. Caldwell now files this motion and for the reasons contained herein and those that may become evident at any hearing on the matter he urges the Court to set conditions of release.

## II. Legal Predicate

A.    Reconsideration is Permissible.

"Although not expressly authorized by the Federal Rules of Criminal Procedure, motions for reconsideration are allowed in criminal cases." *United States v. Jones*, 916 F. Supp. 2d 83, 86 (D.D.C. 2013). Reconsideration is appropriate when there exists "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotations and citation omitted). Manifest injustice or clear error can include "legal errors the court made," *Zyko v. Dep't of Defense*, 180 F. Supp. 2d 89, 91 (D.D.C. 2001), or conclusions "premised on factual error," Ali v. Carnegie Inst. of Washington, 309 F.R.D. 77, 83 (D.D.C. 2015) (citing *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004)). While no Federal Rule of Criminal Procedure specifically provides for motions for reconsideration in criminal cases, the Supreme Court has recognized, in dicta, the utility of such motions. *In re Liuksila*, 133 F. Supp. 3d 249, 255 (D.D.C. 2016) (citing *United States v. Ferguson*, 574 F. Supp. 2d 111, 113 (D.D.C. 2008)).

Mr. Caldwell submits a change in circumstances warrants reconsideration. Namely, he avers that (1) the extraordinary delay in his proceedings since the denial of his previously denied request for release; (2) the challenges surrounding the Court's ability to set his trial within the parameters of the Speedy Trial Act; (3) the conditions of his confinement adversely impacting his Constitutional right to the effective assistance of counsel pursuant to the Sixth Amendment and (4) the now availability of a suitable third party custodian individually and collectively warrant reconsideration.

B. Appropriate Detention Factors

Pretrial detention and release are governed by the Bail Reform Act (BRA), 18 U.S.C. § 3142, et seq. The BRA instructs the Court to seek "the least restrictive further condition or conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." Id. § 3142(c)(1)(B). However, if the Court finds after the hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court "shall order the detention of the person before trial." Id. § 3142(e)(1). Where, as here, a detention ruling is based on a defendant's danger to the community, the Court must make the finding by clear and convincing evidence. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

The Court's determination is governed by four factors:

1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1951, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive or destructive device;

2) The weight of the evidence against the person;

3) The history and characteristics of the person, including –

A.   The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and;

B.      Whether, at the time of the current offense or arrest, the person was on

probation, on parole, or other release pending trial, sentencing, appeal, or

completion of sentence for an offense under Federal, State, or local law; a

and;

4) The nature and seriousness of the danger to any person or the community that

would be posed by the person's release. 18 U.S.C. § 3142(g).

When considering whether there are any conditions of pretrial release "that will reasonably

assure" a particular defendant's appearance in court, and the safety of the community, 18 U.S.C.

§ 3142(f), Congress carefully prescribed these four factors that a court must consider. Id. §

3142(g).

## III. ARGUMENT

A. Nature and Circumstances of the Offense.

The first statutory factor requires the Court to consider "the nature and circumstances of

the offense charged, including whether the offense is a crime of violence." 18 U.S.C. §

3142(g)(1). The BRA, of course, requires a reviewing court to "assess the specific conduct of

each defendant." *United States Chrestman*, No. 21-mj-218 (ZMF), 2021 WL 765662, at *7

(D.D.C. Feb. 26, 2021). The reviewing court should evaluate the nature and circumstances of

Mr. Caldwell's specific conduct, then consider the different factors that warrant potential pretrial

detention for his participation. *Id.*

In addressing this important factor this Honorable Court in its memorandum opinion cited

indicators that Mr. Caldwell came the Capital with the intent to cause a disruption.  Among the

facts relied upon by the Court were:

4

(1) Mr. Caldwell allegedly being captured on video using a two-way radio (Baofeng).[1]

(2) Mr. Caldwell wearing protective eyewear designed to combat mace/tear gas.[2]

Both items taken out of context may suggests that Mr. Caldwell came to the Capital with malicious intent. However, a closer examination reveals the contrary.

First, the Boafeng radio was not used by Mr. Caldwell for any nefarious purpose on January 6, 2021. Although the device *can* be used to facilitate communications via radio transmission, it also is a FM radio. See manufacturer product description. https://baofengtech.com/product/uv-5r/. This is the purpose for which Mr. Caldwell employed the device. As noted previously, there is absolutely no evidence that Mr. Caldwell coordinated his actions with any other individual on January 6. It is undisputed that the events of January 6 were chaotic. As the events were unfolding media outlets were broadcasting reports. These reports were broadcasted on the internet, in print, via television, and radio. Mr. Caldwell, like others on this day, was acutely interested in receiving these reports. The Boafeng radio used by Mr. Caldwell was for the purpose of listening to news accounts of the events on January 6.

Second, the eyewear Mr. Caldwell was depicted wearing on January 6 were not used for any improper reason. Nor is it any evidence of bad intentions. Contrary to the characterization in the Court's memorandum opinion, the eyewear worn by Mr. Caldwell could not effectively be used to shield him from the effects of tear gas or pepper spray. Specifically, the eyewear Mr. Caldwell wore are not designed for this purpose. The glasses are Oakley M frame 3.0. https://www.oakley.com/en-us/product/W0OO9146PPE. They are designed to protect the eyes from sunlight, not gas or spray.

It must also be noted that Mr. Caldwell's attire worn on January 6 has also been grossly

---

[1] *See* Memorandum Opinion p. 4.
[2] *See* Memorandum Opinion p. 23.

mischaracterized.  Mr. Caldwell served in the United States Marines, as such it is common for him to wear military attire.  As noted in the photographs below, Mr. Caldwell often wears such gear while spending time with his family and friends.




B. Weight of the Evidence.

This Honorable Court is well familiar with the weight of the evidence against Mr. Caldwell.  Photographic and video evidence depict what appears to be the defendant on the Capital grounds on January 6, 2021.  While there is no evidence that the defendant physically came into contact with any law enforcement officials, there is evidence that the defendant deployed a spray mist in the general direction of law enforcement officers.  The defendant's actions were in direct response to those perpetrated by law enforcement.  While on the grounds of the Capital the defendant and others were subjected to being maced and shot with rubber bullets by law enforcement.  *See* Exhibit 1 (photo of wounds to defendant's leg); Exhibit 2

(photo of law enforcement spraying mace).

The evidence further establishes that at some point the defendant entered the U.S. Capital. The defendant did not employ force to accomplish this feat.  Once inside the Capital the defendant took photographs and soon thereafter departed.  There is no evidence that the defendant assaulted anyone while inside the Capital.  Further, there is no evidence that the defendant destroyed any property while inside of the Capital.  Finally, there is no evidence or allegation that the defendant participated in any pre-planning concerning the unfortunate events which occurred at the Capital on January 6, 2021.

C. History and Characteristics of the Defendant.

Mr. Caldwell's history and characteristics have been documented in previous court filings. He is a native of the State of Texas and the father of three children.  At the time of his arrest the defendant maintained a stable residence and was gainfully employed.  Although this is not his first contact with the criminal justice system, his criminal record is anything but significant.  His only convictions are for minor or misdemeanor offenses.  He is not a convicted felon.

Although, the government may wish to portray Mr. Caldwell as an unstable individual who



represents a danger to the community the reality is that nothing can be further from the truth. Instead, Mr. Caldwell is a middle aged man who served this country in the United States Marine Corp.  He is a disabled veteran.  As the attached letters of support demonstrate, Mr. Caldwell is actively involved in the lives of his children. *See* Exhibit 3 (letters of support)[3].

In previous proceedings, the government has attacked Mr. Caldwell's character by suggesting that he is a racist who arrived at the U.S. Capital on January 6, 2021, with the intent to storm the building.  As with other unfounded allegations lodged against Mr. Caldwell this narrative is equally false.  Instead, Mr. Caldwell's appearance at the U.S. Capital was merely for the lawful purpose of exercising his Constitutional right to protest.  He is not a racist and holds no ill will towards any race or creed.

---

[3] The attached letters are redacted to protect the identity of the writer.  The names of the writers are known to defense counsel and can be provided to Court under seal, if necessary.

 

D. Danger to Community.

In the course of this Court's consideration of motions for pretrial release or detention, the goal is to ensure that the pretrial release of a defendant will not imperil "the safety of any other person and the community." § 3142(g)(1). Although the government may repeat her previous contention that the mere allegation of involvement with events detailed in the indictment is concerning enough to support detention such a position would result in any defendant charged with the same automatically being detained. Of course, the Bail Reform Act requires much more. It requires a particularized finding that this defendant represents a danger that can not be abated by any conditions of release. The government simply can not demonstrate such

VI.   **Changes in Circumstances**

A.   **Delays**

Since the denial of the defendant's Motion to Revoke the Magistrate's Detention Order on May 21, 2021, this matter has made very little progress towards a final disposition. At the time of the Court's May 21, 2021, order it was nearly impossible to envision the length of the delay and the likely timing of any trial on the merits. The delays have not been attributed to the

defendant and he should not continue to be deprived of his liberty as a consequence of these delays.

The discovery disclosed in this matter is substantial. Since the May 21, 2021 order the government has made 4 discovery disclosures containing an enormous amount of video, investigative reports, and forensic analysis. The volume of the disclosures will require an extensive amount of time for both the defendant and counsel to properly review. Absent doing so, the defendant will remain unable to properly assess the case against him and determine the future course of the proceedings.

In addition to the volume of the discovery to be reviewed in this case, the current detention conditions of the defendant further frustrate his ability to adequately prepare for his defense. The defendant is detained at the Central Treatment Facility of the District of Columbia Department of Corrections. He has no access or means to review the significant amount of evidence provided in electronic form by the government. A protective order in this matter prohibits counsel from providing the defendant was copies of the materials. The only avenue available for the defendant to review the hours of video recordings is for him to meet with counsel, or a designee, and review each item during a authorized legal visit at the facility.[4] This is an overly burdensome and a time consuming process which will necessitate dozens of visits to accomplish. At this rate, it is inconceivable to fathom that it will be accomplished in the next 6 months.

Mr. Caldwell should not continue to be prejudice by these delays. He is entitled to review all of the discovery provided in this matter. He is entitled to participate in his own defense in a meaningful manner. Exercising these rights should not come at a trade for his liberty. In the alternative, this Honorable Court should fashion a outcome which protects Mr. Caldwell's rights

---

[4] The defendant is aware that tablets are provided to the inmates at CTF to aid in the review of the discovery. However, due to the volume of the discovery being provided in all January 6 cases and the number of inmates detained at the facility the opportunity for the defendant to gain access to the discovery has been non-existent.

and not acquiesce to further delays which deny him both his freedom and Constitutional rights to adequately prepare his defense.

Setting conditions of release would alleviate the current untenable situation. If Mr. Caldwell were released he would have greater access to the discovery in this matter. Mr. Caldwell would be in a position to meet with his counsel absent the restrictions presented by his detention. He would be in a position to review the discovery in a more timely manner. Further, he would be in an enhanced position to make an informed decision about how this matter will proceed. The defendant submits that the extraordinary delays attributed to his inability to adequately review the discovery in this matter weighs in favor of the setting of conditions of release.

**B.    Speedy Trial Considerations**

As known to this Honorable Court, and cited in the May 21, 2021 memorandum opinion, the Bail Reform Act provides Mr. Caldwell with Constitutional protections for his right to a speedy trial. At the time this Honorable Court denied Mr. Caldwell's Motion to Revoke the Magistrate's Detention Order, the defendant had been in custody for more than 90 days. Without question his detention had exceeded the 70 day parameters of Speedy Trial Act. Notwithstanding the exclusion of time to be calculated in this case, Mr. Caldwell has now been in custody for nearly 10 months without the setting of a trial date. It is unlikely that the Court anticipated such would be the case in determining whether to grant his request for release.

Mr. Caldwell acknowledges that due to his inability to adequately review the discovery in this matter he has consented on multiple occasions to the exclusion of time under the Speedy Trial Act. In doing so, Mr. Caldwell was required to compromise his Constitutional right to a speedy trial against his right for due process. This should never be the case. A defendant should

not be required to surrender a Constitutional right at the expense of another fundamental right.

An order setting conditions of release would enhance the the defendant's ability to review the discovery. In doing so, it would reduce the likelihood that he would be required to consent to further exclusion of time from the Speedy Trial calculations. It would position the defendant to assert his right to a speedy trial. This Honorable Court should give Mr. Caldwell's speedy trial right proper consideration in determining whether release is appropriate.

### C.   Detention Conditions

Mr. Caldwell further submits his current detention conditions further support release. His current detention condition are deplorable and violate his basic civil rights. It raises serious concerns about his 8th Amendment protections against cruel and unusual punishment. It further serves as an affront to his Constitutional right to effective legal representation as guaranteed by the 6th Amendment.[5]

As detailed in the attached memorandum from the United States Marshal Service (*See* Exhibit 3) the Department of Corrections for the District of Columbia has once again come under scrutiny for the conditions inmates are housed. The attached report details the deplorable and unconstitutional conditions under which inmates are being subjected. These conditions are of such a grave nature that the USMS has reportedly initiated efforts to transfer all federal detainees from the Central Detention Facility. While the report indicates that the conditions at CTF do not warrant the extreme measure of immediate transfer, the defendant avers that the current conditions at CTF should also give this Court grave concerns.

At any evidentiary hearing held on the instant motion the defendant would present the following evidence:

---

[5] Notwithstanding these harsh conditions Mr. Caldwell has avoided any major disciplinary citations and evidence by the attached Work Performance Rating, he is doing what he can to make the best out of the situation. *See* Exhibit 4.

January 6 detainees at CTF are held in a special unit.   They are on lockdown for intermittent 25 hour periods.  Mr. Caldwell is confined to his cell for 25 hours at a time.  At the conclusion of this period he is released into the unit for 12 hours before being required to return to lockdown for another 25 hour period.  Mr. Caldwell is denied adequate nutrition and access to personal hygiene items.  He is subjected to threats of physical harm from other inmates and guards.  Significantly, his ability to review the discovery provided in this matter is extremely limited.  He does not have the ability to review the voluminous materials absent a legal visit.

As recently as November 11, 2021, Mr. Caldwell and other detainees at CTF were subjected to being exposed to tear gas released in their unit.  As a consequence Mr. Caldwell was rendered unconscious and required emergency medical attention.  Mr. Caldwell did nothing to contribute to this event.  As detailed in the attached statement from Mr. Caldwell, the event was horrifying and serves as another example of the adverse detention conditions he is forced to endure.

Upon information and belief, there is currently no plan to transfer inmates at CTF.  As a consequence, absent intervention by this Honorable Court Mr. Caldwell's continued detention will force him to continue to endure these conditions.  This should not be the case.  In the alternative, the Court should fashion conditions of release that address the factors under the Bail Reform Act while balancing the defendant's Constitutional rights.

### D.    Third Party Custodian

In denying Mr. Caldwell's request for revocation of the magistrate detention order, this Honorable Court noted the unavailability of a suitable third party custodian.  Specifically, the Court noted the ineligibility of both Mr. Caldwell's father and ex-wife.  Although, Mr. Caldwell

disagrees with the Court's assessment of the suitability of either previously proposed custodians he now submits that he has identified another family member who stands ready, willing, and is able to serve in this capacity.

Barbara Jacquelyn Caldwell is Mr. Caldwell's step mother.  She is free of any criminal history.  She is over the age of 18 and maintains a stable residence in Eustace, Texas along with her husband.  She has known Mr. Caldwell for more than 40 years.  Upon information and belief, Mrs. Caldwell is willing to execute the requirements of a third-party custodian.

**V. Conclusion**

For the reasons stated herein and those that may become evidence at any hearing, Mr. Caldwell respectfully requests that this Honorable Court enter an order setting conditions of release.

The defendant submits this court should set the following special conditions:

a.  That he be placed on pretrial supervision;

b.  That he be placed on electronic monitoring;

c.  That he be ordered to submit to random urine screens;

d.  That he be ordered to seek full time employment;

e.  That he be ordered to have no contact with any known felons;

f.  That he be released to the custody of Barbara Jacquelyn Caldwell;

g.  And whatever other conditions deemed necessary by this Honorable Court.

I ASK FOR THIS:

_____/s/_____
Robert L. Jenkins, Jr., Esq.
U.S. District Court Bar No.: CO0003
Bynum & Jenkins Law

1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant DANIEL RAY CALDWELL

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and accurate copy of the foregoing to be served upon all counsel of record via ECF on NOVEMBER 22, 2021.

_____/s/_____
Robert L. Jenkins, Jr., Esq.
U.S. District Court Bar No.: CO0003
Bynum & Jenkins Law
1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant DANIEL RAY CALDWELL

# EXHIBIT 1





  

# EXHIBIT 2



# EXHIBIT 3

October 5, 2021



Honorable Colleen Kollar-Kotelly
United States District Court
333 Constitution Avenue, NW
Washington, DC

Dear Judge:

Subject:  U. S. v. Daniel Ray Caldwell

Please allow me to introduce myself to you. I am Daniel Ray Caldwell's aunt and have known him since his birth.

Daniel is a wonderful man, husband, and father. He has three beautiful children. He has always been a very hard worker and has taken care of his family first. Dan served in the United States Marines and served in active duty during the Persian Gulf War. When my sister, his aunt, passed away from melanoma cancer in May 1991, Dan was able to attend her funeral – he was in his Dress Blues – and I was so very proud of him. He puts his family first.

With that being said, I believe it to be a great disservice if Dan should have to stay in detention pending his trial. His children miss him greatly. I miss him greatly.

Thank you for your time. Please reconsider Daniel's release pending trial.

Very truly yours,





October 2, 2021

Honorable Colleen Kollar-Kotelly
United States District Court
333 Constitution Avenue, NW
Washington, DC

Dear Judge:

(1) I am a Sales Strategist for a restaurant concept in Arizona and Texas. I received a Marketing Degree from the University of Texas at Dallas in December of 2017 and started my post-college career in August 2018. I have been promoted twice in my 3 years with the company and now oversee catering sales and strategies for all 16 locations.

(2) I am the ████████ of Daniel Caldwell. It has been 26 years of experiencing first hand, a father who loves and cares for his family unconditionally. He is a best friend to our mother, ████████ and a father who provides support, encourages growth, teaches life lessons and challenges his children to do their best in all that they do while being a good, respectful person to others.

(3) Daniel Caldwell is a good man. He has shown this to his family, his friends, his coworkers, those he just meets and now I am writing as a voice desperate to prove this to *you*. He has worked hard to provide a comfortable life and safe home for our family. I am proud to be his daughter. My sister and I never lacked the presence of our father and held high standards in our relationships with friends and dating relationships because we knew our worth. Our dad never let us forget it. Daniel Caldwell loves this country. He is a true patriot who joined the Marines at 18. He experienced traumas and hardships in the duration of his time in the military, as most of our military members do and carry with them for the rest of their lives. He also experienced hardships in his upbringing and made certain that his family would not experience those same hardships. He would raise his three children in a way that he was not - to ensure that we had a better life and we did. He instilled in me the importance of work ethic. That nothing is handed to us and we must work hard to achieve our goals. At 16, I balanced school, band and a part time job. It was important to him that I understand the value of a dollar and gain a sense of independence that would prepare me for the "real world" because as hard as it was for him to let me go, to experience life living on my own and on my wedding day, he held confidence that he did everything he could to prepare me for it. My 20 year old sister carried these same values and went on into the Air Force. Our brother makes us proud every single day in the man that he is becoming. Daniel spent 18 years with Texas Instruments, working nights for the majority of his time there. He is an intelligent, gifted engineer. He earned a patent in 2008, an honorable accomplishment. My father overcomes challenges and values family greatly. He is a protector of his own and a

protector of the great freedoms this country provides. I believe this is why we are here. The voices of men behind bars, those awaiting their trials in regards to January 6 sing the National Anthem every single night at 9:00 PM. They sing it loud and they sing it proud. I can't speak for them all, but I think this is a character statement and an action to show what those who participate truly stand for. Man makes mistakes but they do not define the entirety of a person. Daniel has a special sense of humor, the best laugh and the best stories to tell. His favorite times are when the family is together and he's able to cook a big meal for everyone. If you sat in a room with him, you would know his heart, his true intentions and the man that he is. Daniel is a true testament of a man who rights his wrongs and means well.

(4) There is no reason Daniel Caldwell should continue to be held pretrial. He is not a danger to his family, his community or society. He is not a flight risk and would not do anything that would lead to an extension of time added to this process.

(5) I ask that Daniel Caldwell be released pending trial. He has a 15 year old son at home who is now in his Sophomore year of high school. These years are crucial in mental development, behavior and decision making in a young boy's life. Our father should be home and physically present while he awaits his trial. There was not a goodbye and to see my brother cry, struggling, in pain because of the sudden detachment is difficult. We understand that certain actions lead to these kinds of hardships, but it has been nearly 8 months of jail time that did not need to be served behind bars pending a fair trial because Daniel Caldwell is not a danger to his community or a flight risk. That he is a "White Supremacist" and "complete whacko" is simply **not true.** A lie told to make sure Daniel Caldwell would not be released. Judge, you would not be receiving such high praises from myself if that were the case. I question the conditions in the jail that seem to be of concern. There is a lack of nutrition being provided to the inmates awaiting their trials. Daniel has the support of his family and the means to travel to his hearings upon release.

Sincerely,



Honorable Colleen Kollar-Kotelly

United States District Court

333 Constitution Avenue, NW

Washington, DC


Dear Judge:


I currently work for the Cassia County Sheriff's Office, serving as the Undersheriff.


I have known Dan Caldwell for around 29 years. I served in the United States Marines Corps with Dan and went on several deployments with him.


I served with Dan through good times and bad. Dan always maintained a positive attitude and taught, supervised and more importantly looked after the Marines in his charge. He's an incredibly hard worker and a great father and husband.


I can see no reason to continue his detention. He is neither a threat to himself, his family or others. He is not a flight risk nor is he a threat to any community.


I believe Dan should be released, pretrial, so that he can be with his family. I believe that his current incarceration is doing unnecessary harm to him and his family.


Respectfully





October 10,2021

Honorable Colleen Kollar-Kotelly
United States District Court
333 Constitution Avenue, NW
Washington, DC

Dear Judge:

I am first and foremost a mom to three beautiful children. Over the past ten years I have worked in the dental field as a Clinical HR Generalist/Recruiting Concierge. I helped support dentist who provided services for underserved populations. After 8years I took a leap of faith and accepted an offer working for a non-medical home health agency working with the elderly and vulnerable adults as a HR coordinator. After Daniel's arrest I had to make a very tough decision to have more flexibility and be home more for our son. I am currently working full time with a demolition company as their AP lead and HR specialist.

I have known Daniel for twenty-nine years, having been married to him for fourteen years. We have three children who we have raised together. We divorced in 2010, eventually Daniel moved back in with us in 2015. Our son was happy to share his room with him. After two half years of living together we restored our relationship and have been working on it ever since, making it a priority to work hard, be the best versions of ourselves and support our three children as they prepared to thrive on their own. Daniel has been a constant provider during our time of being married, divorced, and living together. He has proven great leadership and loyalty in his position at Texas Instruments for the past twenty-one years. Just before his arrest he was acknowledged for his hard work by receiving a great review and raise. Daniel has mastered work life balance, and was very happy in the position he was in. He found the most gratification in mentoring others, especially new employees.

Daniel has played a significant role in all our lives. He has made it his priority to have strong purposeful relationships by being present, humble, witty, and teaching morals and values through love and discipline. We have made a solid parenting team standing by each other, even when things got tough. Daniel understood the importance and what it meant to each one of our children for him to be there to support me. Our kids could always depend on him to be there to answer hard questions, lift them up when they are feeling down or discouraged, help with school projects, attend school events, award ceremonies, band competitions, soccer games, football games, driving lessons and graduations. He is involved in all that they do with excitement and praise.

The significant impact his influence of being a loving father to our two daughters has resulted in both of them being successful leaving home with confidence, resilience, physical and mental well-being. Our oldest graduated from UTD and started her career in marketing and just last year married the love of her life. Our middle daughter joined the Air force and is serving our country with pride, her dad is her biggest hero.

We still have our son at home. Daniel made sure weekly when he wasn't working nights at TI it was routine for them to go out to dinner every Thursday night at their favorite Mexican restaurant, they had outings every other weekend and during summer months they would do yard work together. Dan took care of getting our son to all his doctor or dental appts. They had routine monthly haircuts. Dan did all the grocery shopping, cooking, laundry, and any house duties or improvements that needed to be done while I worked full

time outside the home. They both took care of me last year when I threw out my back until I could have surgery 4months later. They were the best nurses ever. Throughout the years he has built a strong unbreakable relationship with all our children, and it shows in the tight bond they all share. Daniel loves with all his heart, and he never fails to show all of us with his actions.  Our son is struggling and having a very difficult time not being able to see his father since his arrest eight months ago.

It is critical that you know that I am very aware of my honesty and integrity being put into question during Daniel's first bond hearing. I want to assure you I am not a liar and take pride in my strong morals and values by being truthful. I have never been in trouble with the law and therefore I trusted Daniel's lawyer to be upfront and transparent with how this process works. John Hunter Smith did a great job preparing me for his line of questioning, however he never mentioned I would be crossed examined until I asked him the day of, and he said, "ya, don't worry about it". John Hunter Smith never talked to me about the 2008 incident between Dan and me. When the prosecutor started questioning me about race and 2008, I went into complete shock, my mind went blank for a few minutes and I paused several times to try and remember so I could answer the questions truthfully, and by doing this my credibility was put into question.

Daniel is not and has never been a racist or white supremist, this includes all races not just black people which the prosecutor mainly focused on. We both have surrounded ourselves and have made lifelong friends with all ethnicities and this includes our children who have close friends of all races, and I believe this has helped mold them into who they are today. It is deeply troubling he is being labeled this, everyone that knows Daniel are troubled as well.

The domestic violence incident that took place thirteen years ago in 2008 was an isolated incident, it happened one time. This was a result of Daniel being offered a job opportunity in 2005 that took him away from his family a lot longer than expected, three years. The challenges we would face were devastating and ultimately ended our marriage. This incident does not define who we are and who we have been throughout our twenty-nine years of knowing each other. We have always had mutual respect towards one another, gotten along and enjoyed each other's time together. We worked through challenges and faced our differences with communicating and compromise. During our time divorced our three children never had a holiday or birthday without the both of us there, we made it a priority to remain a strong family unit and continue to show our children stability, support and a healthy relationship. Before and after this incident Daniel had never put his hands on me in a violent or angry way or disrespected me and even through this incident, he never verbally abused me, called me any cuss words, and never said anything negative about me to our children. I am not scared of Daniel, I am not a battered ex-wife, I am not saying these things in fear of retaliation. I am saying these things because it is truth.

I strongly believe Daniel should be released pending trial. He has been detained in jail since his arrest February 10,2021.  Although I don't agree with Daniel's actions on Jan 6th, I can with all confidence say Daniel is not and has never been a danger to our community or to the public. Daniel has proven and it is recorded after his 2008 and 2015 incidents when faced with a court order, he follows the rules without hesitation. I would like to also note the lies that have been said about him to keep him detained are terribly disturbing and should be questioned and looked at closer. The conditions in the jail are inhumane and not being addressed. Please have mercy on Daniel and let him come home to his son until his trial date.

Very truly yours,





September 6th, 2021

Honorable Colleen Kollar-Kotelly
United States District Court
333 Constitution Avenue, NW
Washington, DC

RE:  *U.S.  v.  Daniel Ray Caldwell*

Dear Judge Kollar-Kotelly:

     Your honor, My name is ▇▇▇▇ and I am employed as a Maintenance Engineering Specialist with Ford Motor Co. located in Livonia MI.  I am writing to you today on behalf of *Daniel Caldwell*.  I have known Daniel for nearly 30 years. I met Daniel when we both enlisted and took an oath to serve our country in the United States Marine Corp.

     You should know that Daniel immediately took me under his wing, treating me like a brother as he had arrived a good time before me. I will always remember that day when I arrived at HMLA 267, nervous, afraid and my first time away from my family and my home. I will always be grateful for the man he was then and still is today. Having known Daniel this long I can confidently state that he is an extremely hard working man, a loyal friend for life, a man I still look up to, a devoted father & husband,  and a man of principles.

     Your honor I implore you to grant Daniels request for release pending trial. He is not a danger to anyone, he is a Marine. He is a Family man & his family needs him. Friend & Mother of children Kambria, his children Karissa, McKenzie & Landon all miss him dearly. I strongly believe that the continued detainment of Daniel will prove harmful to this family. I have known Daniel a long time &  despite this case, he is a man of character, integrity and a good human being. It is my privilege to have him as a dear friend.

     It is my sincere hope that Your Honor takes this letter into consideration and should you want to speak with me further my contact information included below.

Respectfully and Sincerely,





October 11, 2021

Honorable Colleen Kollar-Kotelly

United States District Court

333 Constitution Avenue, NW

Washington, DC

My name is ▓▓▓▓▓▓▓▓▓ I am Daniel Caldwell's ▓▓▓▓ It is with a heavy heart that I am having to write this letter pertaining to the situation that my son is in, because this is not the Dan that I know.

Dan comes from a family that has served this country in every branch of military service and every war this nation has faced.  He was born while I was doing my tour in the Vietnam War. In his own heart he knows the value of honor to this country, him being a veteran himself- serving with the United States Marine Corp.

I have read with disbelief the many things that have been said throughout this whole process portraying Dan as someone he is not.  He has had some issues in the past and was able to work through them and better himself from them.  Except for those issues, Your Honor, Dan is the type of son every dad would want.  I was always able to depend on Dan with whatever it was that I needed and being a man of near 70 years of age, I'm always needing his help with things.  Although he lived over 1.5 hours from me, I knew he was only a phone call away to help. I'm not speaking of just me either, but the entire family was always able to depend on Dan to be there.

Your Honor, Dan is a good man that is an asset to his community and will continue to be just that if given the chance to correct this wrong he is facing. His family is very willing to help and support him through these troubled times.

It is heartbreaking to see my grandchildren going through this as well. They too have always had their father being there in their lives every day. My heart breaks to sit at my grandson's football games and not have his father sitting right beside me cheering him on. I can see in my grandson the impact this is having on him to. My grandson is lost without his dad, as any 15 year old who loves his father would be.

I have taught all my children and grandchildren that a person's word means something in this life and to stand by it. With that being said Your Honor, I can assure you and give you my word that if Dan can be released till his trial date, I will personally bring him back to your court when it is time to stand before you again.

I pray every day to God for the return of my son to us and will pray that you will take into consideration to allow him to come home to a family that loves and needs him. Thank you, Your Honor, for taking the time to read this and hopefully seeing Daniel Caldwell for the person he really is.

Respectfully,





9/8/2021

Honorable Colleen Kollar-Kotelly

United States District Court

333 Constitution, NW

Washington, DC

Dear Judge:

(1) I am a facility engineering technician for Texas Instruments Inc. I am a project technician in the facilities group for the last 18 months or so, before that I was a fab technician working on various semiconductor equipment since June of 1995. I have been an active volunteer on several booster clubs in my home town.

(2) I have known Daniel Caldwell since about 2000 when I transferred to a fab in Dallas from a fab in Sherman.

(3) Dan helped train me on the new equipment that I was working on and was the measuring stick for all other technicians. He was always patient as he taught me and many others how to be better techs. In the semi-conductor industry there are many nationalities and races and I never once experienced any type derogatory tone from him in his words or actions. We worked a compressed shift together, twelve hours a night, so I feel I knew him well professionally. We did spend a minor amount of time together outside of work and his attitude and actions were the same. He was the friend you could call if you needed help on your house or car and he would show up no matter the time or how tired he would be (flipping days to nights). I consider him a mentor in my early career move to the Dallas area fab. I am sure many more techs feel the same way

(4) I see no useful purpose for Daniel to remain in custody so long waiting on a trial. He has a family that is suffering as well during this long pretrial detention. It can not be easy to communicate with family and lawyers in his current situation. I have never known Daniel to be a threat to the community.

Very truly yours,





October 7, 2021

Honorable Colleen Kollar-Kotelly

United States District Court

333 Constitution Avenue, NW

Washington, DC

My name is ███████████ I am a retired Special Education teacher. I am also Daniel Caldwell's ██████████

I have known Daniel since he was five years old when I first met his father, James. His father and I began living together in 1980, and were married in November 1983 – nearly 38 years ago.

Dan, as most people do, has had a combination of roles in his life. He has always been a caring, dedicated hard-working man. He played sports in high school and joined the marines immediately after – usually putting 'the team' first and very proud to serve. He married a young woman he met while in training in California. Though they have had their ups and downs – including a divorce - they still love one another very much. From the day his first child was born, he has been involved in the raising of his three wonderful children – participating as much as possible in all duties and guidance. Their view of him is one of the most important values in his life. When any friend or family member asks for help, Daniel is there as long as needed.

Additionally, he took great pride in being considered a valuable asset when it came to his profession. Unfortunately, he has lost that position.

Daniel is fully aware that he must face any consequences for choices he makes in life. I know that he will accept those results when the time comes to do so. However, I do not see any benefit in leaving him incarcerated while he awaits trial. In fact, he is not the only one being punished through this detainment. His absence hurts his family in many ways. He has spent many months without any face to face contact with a family that loves and misses him, including a 15 year old son who desperately needs time to process what is happening. Dan is not a threat to anyone at home or in society and will be available to the court whenever it requests him to return.

I pray you will take this matter into consideration with a positive mindset and allow Daniel Ray Caldwell to come home pending his trial date.

With regards,



October 1st, 2021

Honorable
Colleen
Kollar-Kotelly
United States
District Court
333
Constitution
Avenue
NW Washingt
on, DC

Dear Judge:

I am a native Texan, born and raised in Tarrant County. After graduating from TSTC in 1984, I was employed in Process Engineering for 25 years by STMicroelectronics, working on the floor in various front-end wafer fabrication areas. I am now retired and operating my ranch in Cooke County where my husband, Kerry, and I are currently focused on the preservation of a heritage breed of livestock, the American Mammoth Jackstock.

I have known Daniel for seven years, having been introduced to him by my husband who had met Dan in the semiconductor industry. So we all have that shared experience of having worked in the front-end of a wafer fab and, let me tell you what, it is quite an experience. There are operators, maintenance personnel, equipment and process engineers, from every walk of life, and we all work together to create a truly unique product – the microchip! There is no room for racism, or sexism, or any other "ism" in the fab.

While I haven't known Dan as long as my husband has, nor have I worked with Dan directly, he has always proven to be a kind and considerate person. During the pandemic in April of 2020, he brought me a six pack each of Charmin and Ziegenbock as a gift for my birthday. Recollect that store shelves were barren of good toilet paper because of hoarding during the pandemic, not to mention he actually remembered my birthday.

I do not see that any useful purpose will be served by his detention pretrial. He was gainfully employed by an industry that in dire need of qualified workers right now and has a family to support. He certainly does not pose a threat to the safety of the community for any reason.

I believe that Dan should be released pending trial because he has a family and a job that need him, and his friends miss him too.

Very truly yours,





10/03/2021

Honorabloe Collen Kollar-Kotelly
United States District Court
333 Constitution Avenue, NW
Washington, DC

Dear Judge,

My name is ███████████ I am a Lead Operator at Sherwin Williams Manufacturing Plant in Garland, Texas. I have been at this plant for a little over a year and half. Before that I worked at Texas Instruments for almost 16 years. For most of my time there I was an operator. Towards the end of my time there, I became a Maintenance Specialist. This is where I learned from and became great friends with Daniel Caldwell. I had the opportunity of getting trained by him. He is a big part of why I was very good at my job. He was very thorough and nothing less than a respectable colleague. He set me up for success at my position, so much that I was able to train other people and help them out. I have known Daniel since the end of 2018. When I left the company in 2020, we still communicate and hang out. A group of us at work would try to get together at least every other week to have lunch together. We called it our "old man group". Different types of races went to eat. He was friends with everyone in that group. He is a great worker, friend, and father. I had a baby in the middle of 2020, and he gave my wife and I baby gifts. He didn't have to do that, especially with me not knowing him that long, but that's just the kind of person he is. Always willing to help a person in need. These accusations that are being made about him that he is a Racist, are completely, false. I am not white. I am Hispanic and I feel comfortable saying he is a personal close friend of mine. I can recall him saying he was thinking about remarrying his wife and that I and Frank would be his groomsmen. Frank is also Hispanic. If he was racist, I don't believe he would have 2 Hispanics stand by him at his wedding much less be at his wedding. I never felt like had an ounce of hate towards any race at any time. He is not a threat to anyone. He is a man of Honor and Respect. I believe he should be released pending trial. His son misses him dearly. They were very close. He would talk about his family at work, but especially his son. They had a close bond. He will not go AWOL or hurt anyone. He loves his family and it would benefit him, as well as his family to spend time with them again. I would be willing to take full responsibility for him while his trial is pending if that is an option. I have a wife and 2 kids and I would have no issue having my friend, Daniel Caldwell stay with me.

Very Truly,

████████████



October 12, 2021

Honorable Colleen Kollar-Kotelly

United States District Court

333 Constitution Avenue, NW

Washington, DC

Dear Judge:

    (1) I am an Airline Transport Pilot flying On-Demand Charter Jets for Waltzing Matilda Aviation.

    (2) I have known Daniel Caldwell since the early 1990's when we were serving together in the United States Marine Corps.  I have remained friends with Daniel and Kambria all these years and visit them at their family home in The Colony, Texas when able.

    (3) I have known Daniel to be an excellent father and provider for his family whom he loves above all else.  I think this has been demonstrated by the unorthodox living arrangements Daniel and Kambria have worked out in their relationship for the sake of raising three wonderful children.

    (4) In my opinion no useful purpose will be served by his pretrial detention.

    (5) I believe that he should be released pending trial so he can raise his son during his formative high school years.

Very truly yours,





October 6, 2021

Honorable Colleen Kollar-Kotelly
United States District Court
333 Constitution Avenue, NW
Washington, DC

Dear Judge:

(1) I am a project manager for a roofing company.

(2) I have known Daniel for just over two years; His oldest daughter is married to my son.

(3) I believe that Daniel is a good person. I have personally seen how he cares about his family. I watched him work to make his daughter's wedding as special as he could for her and everyone else attending. I saw how he took time to do things with his son on a regular basis. I too have witnessed how polite, respectful and caring his children are. I have noticed that he is always willing to help you if needed.

(4) (5) I see no reason why he should continue to be detained pretrial, but I can think of numerous reasons why he should be released on bond. He has a family that he hasn't seen in about eight months. He has a fifteen year old son that needs a father. What is gained by the continued pretrial detention? He is of no danger to society. He could be out on bond being productive. He is not a flight risk. So would you please consider releasing Daniel on bond during this pretrial period?

Sincerely,





PP 4210.2
Attachment J
Inmate Institutional Work Program

# DC DEPARTMENT OF CORRECTIONS
## WORK PERFORMANCE RATING – INMATE

| Inmate's Name | | DCDC # | Date |
|---|---|---|---|
| Caldwell, Daniel | | 376-977 | 10/6/21 |

| Evaluation Period (Month/Year) | Squad | Position/Grade |
|---|---|---|
| May — October 2021 | C2B | Assistant Head Detail |

### 1. Quality of Work

| | | |
|---|---|---|
| ✓ | Excellent | Does superior work. Does more work than is expected or required. |
| | Satisfactory | Makes fewer mistakes than most workers at this level of training/work. |
| | Good | Acceptable level of work. Produces average volume of work. |
| | Fair | Often makes mistakes; often completes less work than others of same skill level. |
| | Unsatisfactory | Repeatedly makes errors, shows little interest in producing better quality, low output. |

### 2. Quantity of Work

| | | |
|---|---|---|
| ✓ | Excellent | Superior work and exceeds expected productivity. |
| | Good | Motivated to work; does full days work, wastes little time. |
| | Satisfactory | Works steadily but does not push to exceed. |
| | Fair | Does just enough to get by, has to be encouraged to do more. |
| | Unsatisfactory | Very low output, must be prompted to complete work. |

### 3. Initiative

| | | |
|---|---|---|
| ✓ | Excellent | Good ideas to improve work, does work to improve skills, works with positive attitude. |
| | Good | Adapts well to change, works to improve skills, works with above average interest. |
| | Satisfactory | Starts work without being told, generally works with a positive attitude. |
| | Fair | Shows minimal interest, usually relies on others to say what needs to be done. |
| | Unsatisfactory | Shows little job interest, waits to be told what to do, works with a negative attitude. |

### 4. Dependability, Safety, Care of Equipment

| | | |
|---|---|---|
| ✓ | Excellent | Work is very reliable, consistent and thorough, always completes tasks on time. |
| | Good | Work is usually reliable and consistent. |
| | Satisfactory | Completes work on time . |
| | Fair | Work is sometimes unreliable, satisfied to complete a minimum of work. |
| | Unsatisfactory | Work is usually unreliable. Does not accept responsibility and gives up easily. |

### 5. Response to Supervision

| | | |
|---|---|---|
| ✓ | Outstanding | Makes a real effort to please supervisor, does exactly what is required. |
| | Good | Accepts feedback well, tries to improve. |
| | Satisfactory | Generally does what is told, accepts instruction, feedback. |
| | Fair | Resists or ignores suggestions. |
| | Unsatisfactory | Responds with hostility towards work assignments, regularly argues with supervisor. |

### 6. Overall Job Proficiency: If in community based upon inmate's performance would you:

| | |
|---|---|
| ✓ | Promote this inmate to a more demanding job at a higher rate of pay |
| | Raise this inmate's pay but keep individual at same job |
| | Continue to employ this inmate but would not recommend for promotion or pay raise |
| | Transfer this inmate to a less demanding job at a lower rate of pay |
| | Terminate inmate's employment |

| Supervisor's Signature | Date |
|---|---|
| E.Y. Cabbagestock | 10/6/21 |

| Inmate's Signature | Date |
|---|---|
| Daniel R. Caldwell | 10/6/21 |

**Inmate's Response**

Accepted & Much APPRECIATED "Alright"

Caldwell is assigned as the Assistant Head Detail on the unit. At this time there are no concerns as it pertains to his work performance or behavioral issues. Caldwell continuously displays a high level of respect and is always helpful when carrying out his assigned duties to include Laundry & Food Services

| Original | Inmate's Institutional File |
|---|---|
| Copy | Inmate Worker |
| | Squad Supervisor |