**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DANIEL RAY CALDWELL,<br><br>Defendant | Criminal Action No. 21-181 (CKK) |

**MEMORANDUM OPINION**
(January 19, 2022)

Defendant Daniel Ray Caldwell is charged with seven felony and misdemeanor offenses arising from his participation in the events at the United States Capitol on January 6, 2021.  After his arrest in Texas on February 10, 2021, the Government moved for Defendant Caldwell to be detained pending trial.  Magistrate Judge Kimberly C. Priest Johnson of the United States District Court for the Eastern District of Texas held a detention hearing and ordered that Defendant Caldwell be detained pending trial.  Defendant Caldwell subsequently sought review of that decision by this Court in his [21] Motion to Revoke or Amend Magistrate's Order of Pretrial Detention, in which he requested that this the Court revoke the magistrate judge's detention order and place him on pretrial release with conditions.  The Court denied Defendant Caldwell's motion on May 21, 2021 and ordered that he remain detained pending trial.  Defendant Caldwell now seeks reconsideration of that order, arguing that his continued detention will infringe his rights to a speedy trial and to effective assistance of counsel.  He also contends that the "availability" of a new third-party custodian warrants reconsideration of his pretrial detention.

Upon careful consideration of the pleadings,[1] the relevant legal authorities, and the entire record, the Court **DENIES** Defendant Caldwell's [38] Motion for Reconsideration of the order denying his motion to revoke the magistrate judge's detention order.

## I.   BACKGROUND

Defendant Caldwell is charged by Superseding Indictment with seven felony and misdemeanor counts: (1) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (2) Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); (3) Entering and Remaining in a Restricted Building or Ground with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A); (4) Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of  18 U.S.C. §§ 1752(a)(2) and (b)(1)(A); (5) Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A); (6) Disorderly Conduct in a Capitol Building, in violation of  40 U.S.C. § 5104(e)(2)(D); and (7) Act of Physical Violence in the Capitol Grounds or Building, in violation of 40 U.S.C. § 5104(e)(2)(F).  Superseding Indictment, ECF No. 41.

---

[1] The Court's consideration has focused on the following:
- Defendant's Motion to Revoke or Amend Magistrate's Order of Pre-Trial Detention ("Def.'s Mot."), ECF No. 21;
- Government's Opposition to Defendant's Motion for Pre-Trial Release ("Gov.'s Opp'n"), ECF No. 22;
- Defendant's Reply to the Government's Opposition to Defendant's Motion for Pre-Trial [Release] ("Def.'s Reply"), ECF No. 23;
- Defendant's Amended Motion and Incorporated Memorandum in Support for Reconsideration of Defendant's Motion for Release ("Def.'s Mot. to Reconsider"), ECF No. 38;
- Government's Opposition to Defendant's Motion for Reconsideration of Pre-Trial Release ("Gov.'s Opp'n to Def.'s Mot. to Reconsider"), ECF No. 39;
- Government's Supplemental Opposition to Defendant's Motion for Reconsideration of Pre-Trial Release ("Gov.'s Suppl. Opp'n to Def.'s Mot. to Reconsider"), ECF No. 43; and
- Defendant's Reply ("Def.'s Mot. to Reconsider Reply"), ECF No. 45.

The Court previously explained the relevant background of this case in its May 21, 2021 Memorandum Opinion, ECF No. 25.  The Court reincorporates that discussion and repeats much of it below.  As noted in its earlier Memorandum Opinion, the facts stated here do not represent the Court's findings of fact on the merits of the case, which are the province of the jury.

### A.  Factual Background

On January 6, 2021, a joint session of the United States Congress convened to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020.  *See* Compl., Stmt. of Facts ("SOF") at 1, ECF No. 1-1.  The joint session began at approximately 1:00 p.m., with then-Vice President Michael R. Pence presiding.  *Id.*  By 1:30 p.m., the United States House of Representatives and the United States Senate adjourned to separate chambers within the Capitol to resolve an objection raised in the joint session.  *Id.*  Vice President Pence continued to preside in the Senate chamber.  *Id.*  As the House and Senate proceedings took place, a large crowd of protesters gathered outside the Capitol.  *Id.*  "[T]emporary and permanent barricades were in place around the exterior of the . . . building, and United States Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside."  *Id.*

Shortly after 2:00 p.m., "individuals in the crowd forced entry into the Capitol building, including by breaking windows and by assaulting members of the Capitol Police, as others in the crowd encouraged and assisted those acts."  *Id.*  These violent acts caused members of the Senate and House of Representatives to evacuate the chambers of the Capitol and suspend the certification process of the presidential election results.  *Id.*

Defendant Caldwell drove from The Colony, Texas to Washington, D.C. to "protest" Congress's certification of the presidential election results.  *See* Def.'s Reply at 3.  Videos from

the Capitol Police, including body-worn camera videos, and from an "independent YouTube vlogger" show Defendant Caldwell on the lower west terrace outside of the Capitol at approximately 2:05 p.m., walking up the steps towards a group of law enforcement officers forming a "human shield." Gov.'s Opp'n at 3–5. Caldwell was wearing an "olive drab in color hoodie, dark glasses . . . , a camouflage hat, camouflage assault pack, and camouflage trousers." *Id.* at 3. According to Agent Webb, the dark glasses were "military-style issued eye pro or eye protection" glasses, which "wrap around the eye" and "protect the eye from liquids or objects from getting poked in the eye[.]" Def.'s Mot. Ex. A, Hr'g. Tr. (Feb. 22, 2021) at 13:15–23, 40:16–22, ECF No. 21-1.

The videos capture Defendant Caldwell spraying an orange-yellow chemical spray at the line of police officers, some of whom were equipped with riot shields. The chemical spray is thick enough to be visible in videos:



Gov.'s Opp'n at 4, Figure 1; *see also id.* at 3–4, Figures 2–4. Additional videos show Defendant Caldwell at the front of a crowd confronting police officers, "flipping off" police officers, and

spraying "a mist of pepper spray/mace while moving his hand from left to right in an attempt to get the entire line of officers." Gov.'s Opp'n at 6–7, Figures 5–7.  Defendant Caldwell was also captured on video speaking into a Baofeng radio:



Gov.'s Opp'n to Mot. to Reconsider at 10, Figure 11.

In a later video, recorded at 4:54 pm on January 6, 2021 and uploaded to ProPublica, Defendant Caldwell spoke to off-camera interviewers about his participation in the events at the Capitol.  Gov.'s Opp'n at 8; *see also* SOF at 3–4.  Defendant Caldwell stated in the ProPublica video that ten minutes after "storming the Capitol," a large fight broke out and a female was "hit in the neck."  SOF at 4.  Caldwell then said that police began spraying mace towards the crowd, and Caldwell told the police that if they continued, he would return spray.  *Id.*  He stated that he then sprayed toward the police officers, and believed that he sprayed about fifteen of them.  *Id.* At the time of the detention hearing, the Government had not identified videos showing Defendant Caldwell inside the Capitol building.  *See* Hr.'g Tr. (Feb. 22, 2021) at 22:4–15.  Defendant Caldwell now concedes that he entered the Capitol building on January 6, 2021.  *See* Def.'s Mot. to Reconsider at 5, 7; *see also* Gov.'s Opp'n to Def.'s Mot to Reconsider at 3, Figure One.

5

Defendant Caldwell was arrested on a warrant pursuant to a criminal complaint on February 10, 2021.[2]  *See* Rule 5(c) Documents at 7, ECF No. 8.  In a search incident to arrest, the FBI seized an "olive drab in color hoodie."  Hr'g Tr. (Feb. 22, 2021) at 11:21–23.  The FBI also executed a search warrant of Defendant Caldwell's residence, during which the FBI seized an "assault pack," as well as "several trousers and baseball hats with the multi cam, camouflage pattern," items which were "consistent" with the clothing Defendant Caldwell was wearing in the videos from January 6, 2021.  *Id.* at 11:24–12:4, 13:11–14.  A black Baofeng radio was also seized from Defendant Caldwell's residence.  Gov.'s Opp'n at 9.  Dark-tinted sunglasses were recovered from Defendant Caldwell's vehicle.  *Id.*  After Defendant Caldwell was arrested, he indicated to the FBI that he had "12 to 13 firearms locked in a safe in his residence," as well as "multiple Airsoft weapons" throughout the residence.  Hr'g Tr. (Feb. 22, 2021) at 14:4–13.

### B.  Procedural Background

The Government moved to detain Caldwell pending trial pursuant to 18 U.S.C. § 3142(f)(1).  *See* Order of Detention Pending Trial ("Det. Order") at 1, 3, ECF No. 8.  A detention hearing before Magistrate Judge Kimberly C. Priest Johnson of the U.S. District Court for the Eastern District of Texas was held on February 22 and March 4, 2021.  *Id.*

During the detention hearing, Agent Webb testified regarding the investigation of Defendant Caldwell.  *See supra* Section I(A).  He was asked if he believed Defendant Caldwell would be a danger to the community if released pending trial.  He responded that he did believe Defendant Caldwell would be a danger to the community, citing the defendant's criminal history and the fact that Defendant Caldwell brought an "unidentified propellant" to the United States Capitol and used it against law enforcement officers.  Hr'g Tr. (Feb. 22, 2021) at 18:11–19:8.

---

[2] Additional details regarding the government's efforts to identify Defendant Caldwell are described in the Court's earlier Memorandum Opinion.  *See* Mem. Op. at 6–7.

Agent Webb also testified that he believed that if Defendant Caldwell was released, he would not appear in court in the District of Columbia, due to financial limitations and his lack of ties to this jurisdiction. *Id.* at 19:11–24. He testified that Defendant Caldwell does not have a passport and was most recently out of the country twelve years ago. *Id.* at 33:19–25. Defendant Caldwell was fired from his job at Texas Instruments as a result of his arrest in this case. *Id.* at 49:25–50:2.

Ms. Kambria Caldwell testified during the detention hearing as a potential third-party custodian. She and Defendant Caldwell were married for fourteen years and then divorced. *Id.* at 47:3–7. Although still divorced, they have lived together since approximately 2015 or 2016 and have three children together, including two adult children and a son in high school. *Id.* at 47:8–25. Ms. Caldwell testified that she believes Defendant Caldwell would follow any conditions of release and that she would contact the Court immediately if he did not follow any conditions of release. *Id.* at 51:8–19. Ms. Caldwell also represented that the firearms that had previously been stored in their house had been removed. *Id.* at 51:20–52:1.

During cross-examination, Ms. Caldwell was asked if she had ever heard her husband use "racial comments." *Id.* at 54:2–9. She stated that she had not. *Id.* Magistrate Judge Johnson noted that Ms. Caldwell took a long pause before responding to that question, was reminded by the Government that she was under oath, and then was re-asked the question, to which Ms. Caldwell answered "no." Det. Order at 5; *see* Hr'g Tr. (Feb. 22, 2021) at 54:2–9.

The Government also asked Ms. Caldwell about a domestic altercation between her and Defendant Caldwell in February 2008. Ms. Caldwell testified, "Well, we had been going through a lot of things—issues—so it was all coming to a point where we were both very heated. So, it just escalated, and it was—so, I had to call 911 and there was a 911 interference and so by the time they came, they were going to arrest both of us. But they arrested [Defendant Caldwell] for 911

interference." *Id.* at 57:14–24.  The Government then "read the police report's comments" from that incident, Det. Order at 6, which indicated that Defendant Caldwell "became very violent," "slammed" Ms. Caldwell on a table, and "straddled [her] so [she] couldn't move." *Id.* at 60:2–8. He "yanked the phone out of the wall" when she tried to call 911. *Id.* at 60:9–14.  Following this incident, Ms. Caldwell sought a protective order and filed for divorce. *Id.* at 59:24–60:1, 66:6–12; *see also* Det. Order at 6.  Defendant Caldwell was charged with disorderly conduct (a misdemeanor) and assault causing bodily injury – family violence, but was not convicted of the assault offense. *See* Def.'s Mot. at 5.

Magistrate Judge Johnson observed that Ms. Caldwell answered questions by defense counsel "readily and quickly," but "slowly and vaguely answered from the Government." Det. Order at 7.  The court concluded that Ms. Caldwell's "hesitancy and selective manner of answering casts doubt on the credibility of her testimony."[3] *Id.*

Defendant Caldwell's father, Mr. James Caldwell, also testified as a potential third-party custodian. *See* Def.'s Mot. Ex. B, Hr'g Tr. (Mar. 4, 2021), ECF No. 21-2.  Mr. Caldwell testified that he is retired and lives with his wife and daughter. *Id.* at 4:24–25, 5:11–12.  He stated that he did not have any firearms or ammunition, or any alcohol in his home. *Id.* at 6:19–7:3.  Mr. Caldwell testified that he believed his son, if released, would comply with all terms and conditions, and that Mr. Caldwell would report to the Court if he did not. *Id.* at 7:4–11.  Mr. Caldwell was also asked about the circumstances of Defendant Caldwell's arrest for driving while intoxicated in October 2013 in Denison, Texas. *See id.* at 7:9–19, 13:9–13; *see also* Def.'s Mot. at 5.  According

---

[3] Filed with Defendant Caldwell's motion to reconsider is a letter from Ms. Caldwell, in which she indicates that she was not prepared to be cross-examined during the detention hearing, and when asked about the defendant's earlier criminal charges, her "mind went blank for a few minutes and [she] paused several times to try and remember so I could answer the questions truthfully, and by doing this my credibility was put into question."  Def.'s Mot. to Reconsider, Ex. 3.

to the Government, Defendant Caldwell had to be restrained when law enforcement tried to serve a warrant for a blood draw because he "fought so much at the hospital, that he broke the hospital bed." Hr'g Tr. (Mar. 4, 2021) at 7:9–19, 9:17–19. Mr. Caldwell testified that he was unaware of specific circumstances of this incident. *Id.* at 9:7–19.

Making a credibility assessment, Magistrate Judge Johnson concluded that neither Ms. Caldwell nor Mr. Caldwell would be a suitable third-party custodian, noting a lack of confidence that either family member would promptly and truthfully contact the court if Defendant Caldwell violated a condition of his release. Det. Order at 7. The magistrate judge noted the following reasons for ordering Defendant Caldwell to be detained pending trial: weight of evidence against the defendant is strong; subject to lengthy period of incarceration if convicted; prior criminal history; history of violence or use of weapons; history of alcohol or substance abuse; lack of stable employment; lack of significant community or family ties to the charging district. *Id.* Based on these reasons, Magistrate Judge Johnson concluded that the Government had proven by "clear and convincing evidence" that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community and ordered Defendant Caldwell detained pending trial. *Id.* at 2–3.

Defendant Caldwell sought review of Magistrate Judge Johnson's detention order in this Court. *See* Def.'s Mot. The Court denied Defendant Caldwell's motion to revoke or amend the detention order in a Memorandum Opinion and Order dated May 21, 2021. *See* Order, ECF No. 24; Mem. Op., ECF No. 25. Considering the factors enumerated in 18 U.S.C. § 3142(g), the Court concluded that the Government had met its burden of establishing, by clear and convincing evidence, that no condition or combination of conditions could be imposed that would reasonably assure the safety of the community if Defendant Caldwell were released pending trial. *See* Mem.

Op. at 14–26. In his present motion, Defendant Caldwell seeks reconsideration of the Court's earlier decision denying his motion to revoke the detention order.  That motion is ripe for the Court's consideration.

## II.     LEGAL STANDARDS

### A.  Motion for Reconsideration of Interlocutory Decisions

"Although the Federal Rules do not specifically provide for motions for reconsideration in criminal cases, the Supreme Court has recognized, in *dicta*, the utility of such motions." *United States v. Ferguson*, 574 F. Supp. 2d 111, 113 (D.D.C. 2008) (citing *United States v. Dieter*, 429 U.S. 6, 8 (1976)).  "This Court has adopted such a philosophy by regularly entertaining motions for reconsideration in a criminal context, applying the analogous Federal Rules of Civil Procedure." *In re Extradition of Liuksila*, 133 F. Supp. 3d 249, 255 (D.D.C. 2016); *see also United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (listing cases applying standards from Federal Rules of Civil Procedure in reconsideration context).

The Court's decision to deny Defendant Caldwell's initial Motion to Revoke Pretrial Detention was an interlocutory decision.  As it has before, the Court again shares the view in this district that a motion to reconsider an interlocutory decision may be granted "as justice requires." *See, e.g., Coulibaly v. Tillerson*, 278 F. Supp. 3d 294, 301 (D.D.C. 2017); *United States v. Dynamic Visions, Inc.*, 321 F.R.D. 14, 17 (D.D.C. 2017); *Sunia*, 643 F. Supp. 2d at 60–61; *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005).  The proponent carries the burden of proving "that some harm, legal or at least tangible, would flow from a denial of reconsideration," and accordingly persuading the Court that in order to vindicate justice it must reconsider its decision. *Dynamic Visions, Inc.*, 321 F.R.D. at 17 (internal quotation marks omitted) (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005)).

"In general, a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: '(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order.'" *Zeigler v. Potter*, 555 F. Supp. 2d 126, 129 (D.D.C. 2008) (quoting *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003)), *aff'd*, No. 09-5349, 2010 WL 1632965 (D.C. Cir. Apr. 1, 2010). Justice may also require reconsideration " 'where a controlling or significant change in the law or facts has occurred since the submission of the issue to the court.'" *McLaughlin v. Holder*, 864 F. Supp. 2d 134, 141 (D.D.C. 2012) (quoting *Ficken v. Golden*, 696 F. Supp. 2d 21, 35 (D.D.C. 2010)). However, motions for reconsideration "cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier." *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (internal quotation marks omitted) (quoting *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010)).

### B. Motion to Reopen Detention Hearing

The Bail Reform Act permits pretrial detention in only "carefully defined circumstances." *United States v. Simpkins*, 826 F.2d 94, 95–96 (D.C. Cir. 1987). A detention hearing must be held only if a case involves any of an enumerated set of offenses, including a crime of violence or a felony that involves the use of a dangerous weapon, § 3142(f)(1), or if the defendant poses a serious risk of flight or of trying to obstruct justice or threaten, injure, or intimidate a witness or juror, *id.* § 3142(f)(2)(A)–(B).

The Court may reopen a detention hearing "at any time before trial" based upon a finding "that information exists that was *not known* to the movant at the time of the hearing and that has a *material bearing* on the issue whether there are conditions of release that will reasonably assure

the appearance of such person as required and the safety of any other person and the community."

18 U.S.C. § 3142(f)(2) (emphases added).   "New and material information . . . consists of

something other than a defendant's own evaluation of his character or the strength of the case

against him; instead, it must consist of truly changed circumstances, something unexpected, or a

significant event." *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020) (quoting *United States

v. Esposito*, 354 F. Supp. 3d 354, 359 (S.D.N.Y. 2019)).

### III.   DISCUSSION

Defendant seeks reconsideration of his pretrial detention due to a "change in

circumstances," including the "delay in his proceedings since the denial of his . . . request for

release" and the "challenges surrounding the Court's ability to set his trial within the parameters

of the Speedy Trial Act."   Def.'s Mot. to Reconsider at 2.   He further contends that his present

conditions of confinement "adversely impact[ ] his Constitutional right to effective assistance of

counsel."   *Id.*   And he contends that the "availability" of a "suitable third-party custodian" not

previously considered by the Court or by the magistrate judge alters the analysis of whether any

condition or combination of conditions of pretrial release will reasonably assure the safety of the

community.   However, before addressing these arguments about "changed circumstances," the

Court shall address Defendant Caldwell's arguments that the Court erred in its previous analysis

of the factors supporting pretrial detention under 18 U.S.C. § 3142(g).

### A.  Analysis of 18 U.S.C. § 3142(g) Factors

As the Court discussed in its earlier Memorandum Opinion, "[t]o justify detention on the

basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no

condition or combination of conditions will reasonably assure the safety of any other person and

the community.'"   *United States v. Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir. 2021) (quoting

18 U.S.C. § 3142(f)).  This standard requires the Government to establish that the defendant "poses a concrete, prospective threat to public safety" that cannot be sufficiently mitigated by release conditions.  *Id.* at 1280; *see also United States v. Salerno*, 481 U.S. 739, 751 (1987) (requiring the government to "prove[ ] by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community").

To determine whether a defendant is a danger to the community, the Court must "identify an articulable threat posed by [him]," based upon a "factbound inquiry" including the "context" of the charged offenses.  *United States v. Sabol*, Crim. Action No. 21-35-1 (EGS), 2021 WL1405945, at *7 (D.D.C. Apr. 14, 2021) (citing *Munchel*, 991 F.3d at 1283) (additional citations and quotation marks omitted).  In so doing, the Court considers the 18 U.S.C. § 3142(g) factors: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." § 3142(g).  In its previous Memorandum Opinion, the Court reviewed the record available at the time and concluded that these factors weighed in favor of Defendant Caldwell's continued pretrial detention.  Mem. Op. at 14–26.

Defendant Caldwell devotes a signification portion of his motion to re-arguing the application of the § 3142(g) factors to the evidence available on the record.  *See* Def.'s Mot. to Reconsider at 4–9.  In doing so, he relies on information that was available to him at the time of the detention hearing; he presents no new evidence or argument that would materially alter the Court's prior analysis that no conditions of release will reasonably assure the safety of the community.  The factors underlying the Court's earlier decision remain the same: Defendant Caldwell is charged with serious felonies and is alleged to have sprayed a chemical agent at law

enforcement officers.  *See* Mem. Op. at 14–19.  The Government has strong evidence in this case, including videos and photos of the defendant and his actions on the Capitol grounds.  *Id.* at 19. Defendant Caldwell appears to have planned to engage in violence, having brought chemical spray with him to Washington, D.C.  *Id.* at 16.  He has previously been charged with criminal conduct. *Id.* at 20–21.  Defendant Caldwell's reliance on facts already considered by the Court in ordering his pretrial detention does not entitle him to have his detention hearing reopened.  *See* 18 U.S.C. § 3142(f)(2); *United States v. Worrell*, Case No. 1:21-cr-292-RCL, 2021 WL 2366934, at *11 (D.D.C. June 9, 2021).

Defendant Caldwell also has not established any legal or factual error in the Court's previous analysis entitling him to reconsideration of the Court's earlier decision.  For example, Defendant Caldwell contends that he was merely using the Baofeng radio as an FM radio to listen to "news accounts of the events on January 6."  Def.'s Mot. to Reconsider at 5.  But a photograph captured from police body-worn camera and provided by the Government in its Opposition (and copied *supra* Section I(A)), appears to show Defendant Caldwell *speaking* into the radio—not listening to it.  *See* Gov.'s Opp'n to Def.'s Mot. to Reconsider at 10, Figure 11.  Accordingly, the Court's earlier analysis of this evidence is unchanged.  *See* Mem. Op. at 8 (noting that evidence of Defendant Caldwell using a Baofeng radio "supports an inference that Defendant Caldwell was coordinating with other rioters, which is not controverted by Defendant Caldwell").

Similarly, Defendant Caldwell contends that his "attire worn on January 6" has been "grossly mischaracterized," noting that he served in the military and commonly wears military-style gear while "spending time with his family and friends."  Def.'s Mot. to Reconsider at 5–6. As to his eyewear, Defendant Caldwell notes that it was "not designed" for the purpose of shielding him from chemical sprays.  *Id.* at 5.  The Court's discussion of Defendant Caldwell's apparel was

limited to describing the government's efforts to identify him as the individual shown in the BWC videos spraying police officers with a chemical agent.  *See, e.g.*, Mem. Op. at 3–4, 7.  The Court did note that Defendant Caldwell's eyewear may have evidenced Defendant Caldwell's pre-planned intent to deploy a chemical spray, coupled with the facts that he *brought* and *actually did deploy* a chemical during a "protest."  *See* Mem. Op. at 16 ("That he brought [a] weapon with him to the Capitol, while also wearing glasses designed to prevent spray from penetrating his own eyes, suggests that Defendant Caldwell arrived at the Capitol with the intent to use the weapon—not, as he contends, merely to 'express his opinion to the current political climate.'")

Defendant Caldwell further argues that the Court's previous assessment of the weight of the evidence against him was incorrect.  He contends, for example, that he "deployed a spray mist in the general direction of law enforcement officers," in "direct response to [the actions] perpetrated by law enforcement[.]"  Def.'s Mot. to Reconsider at 4–5.  The Government disputes this characterization, indicating that BWC videos and officer testimony demonstrate that "defendant's spray directly hit and impacted the officers."  Gov.'s Opp'n to Mot. to Reconsider at 5–6.  The Government also indicates that, although law enforcement officers did use pepper spray, *id.* at 9, Figure 10, they did so while being attacked and threatened by other rioters, *id.* at 7–9.  Defendant Caldwell has cited no legal authority—and the Court is unaware of any—standing for the proposition that he may retaliate against law enforcement officer attempting to subdue an aggressive crowd attempting to gain entry to a restricted area.  His arguments fail to show that the Court incorrectly weighed this fact in its consideration of the § 3142(g) factors.

Defendant Caldwell next concedes that he *did* enter the Capitol building, but claims that did not use force to do so, did not assault anyone while inside, and did not destroy any property.  Def.'s Mot. to Reconsider at 7.  He cites these facts—which the defendant presumably would have

known at his detention hearing—as *favorable* circumstances supporting pretrial release.  *See id.*  The Court disagrees with such logic.  At the time the Court ordered that Defendant Caldwell remain detained, there was no evidence on the record that he had entered the Capitol building on January 6, 2021; the Court reached its conclusion that continued detention was appropriate even without knowing whether or not Defendant Caldwell went inside the Capitol.  The fact that he now concedes that he *did* enter the Capitol but claims he did not assault anyone *inside* the Capitol or damage any property certainly does not compel the Court to alter its earlier findings.  Rather, the evidence in the case shows that he *did* assault law enforcement officers by spraying them with a chemical agent in efforts to force entry into the Capitol.

Finally, Defendant Caldwell seeks to re-litigate the Court's analysis of his "history and characteristics," submitting to the Court letters attesting to his character and his role as a father to his three children.  *See* Def.'s Mot. to Reconsider at 8; Ex. 3.  Again, none of this information is "new"—it was not "unknown" to Defendant at the time of his detention hearing, and therefore cannot serve as the basis for re-opening a detention hearing.  *See Lee*, 451 F. Supp. 3d at 5 ("New and material information . . . consists of something other than a defendant's own evaluation of his character[.]").  And Defendant Caldwell makes no claim that the Court failed to consider some of his personal characteristics, including, for example, his status as a veteran and a father, and the fact that (prior to his arrest in this case) he held stable employment.  *See* Mem. Op. at 20–21.

In sum, Defendant Caldwell has not presented any new information material to the analysis of the § 3142(g) factors, nor he has he demonstrated any error in the Court's prior application of these factors warranting reconsideration of his pretrial detention.  Rather, the Court reaffirms its earlier conclusion that the violent offenses committed by Defendant Caldwell on January 6, 2021 are "serious enough on their own to militate against pretrial release[.]" *United States v. Whitton*,

Crim. Action No. 21-35-5 (EGS), 2021 WL 1546931, at *9 (D.D.C. Apr. 20, 2021).  His use of violence against law enforcement officers puts him in a "different category" of dangerousness than those defendants who did not engage in violence.  *See Munchel*, 991 F.2d at 1284.  His continued detention is appropriate on these grounds.

**B.  Changed Circumstances**

The Court turns next to Defendant Caldwell's arguments that changed circumstances warrant reconsideration of his continued pretrial detention.  As set forth below, the Court is not persuaded that any of these purported "changes" compel the Court to reverse course by releasing Defendant Caldwell pending trial.

1.  Delay in Proceedings

Defendant Caldwell first contends that the "delay in his proceedings since the denial of his . . . request for release" and the "challenges surrounding the Court's ability to set his trial within the parameters of the Speedy Trial Act" weigh in favor of pretrial release.  Def.'s Mot. to Reconsider at 2.  Defendant Caldwell notes that he has been in custody for approximately ten months and no trial date has been set, and that the length of his detention has "exceeded the parameters of the Speedy Trial Act." *Id.* at 11.

Notably, at this point in time, a trial date has not been requested.  Rather, Defendant Caldwell has repeatedly consented to exclusion of time under the Speedy Trial Act.  *See* Def.'s Mot to Reconsider at 11; *see* Minute Orders dated April 7, 2021; June 3, 2021; August 16, 2021; August 26, 2021; November 8, 2021.  In each case, the Court has found that the exclusion of time under the Speedy Trial Act serves the "ends of justice" and outweighs the interests of both the community and Defendant Caldwell in a speedy trial, in light of the ongoing COVID-19 pandemic and to allow Defendant Caldwell to review discovery and consider pretrial disposition of the case.

18 U.S.C. § 3161(h)(7)(A), (B)(i),(ii), (iv).  Defendant Caldwell has not objected to these findings or to the exclusion of time under the Speedy Trial Act.

Now, Defendant Caldwell contends that he has consented to exclusion of time under the Speedy Trial Act to allow additional time to review the voluminous discovery in this matter, putting him in a position of "compromis[ing] his Constitutional right to a speedy trial against his right for due process."  Def.'s Mot. to Reconsider at 11–12.  He claims, for example, that  current protocols at the District of Columbia jail due to the COVID-19 pandemic have frustrated his ability to obtain and review discovery with his counsel.  *See id.* at 10, n.4, 11 ("[T]he extraordinary delays attributed to his inability to adequately review the discovery in this matter weighs in favor of setting of conditions of release.").  He does not, however, "dispute that the government has been diligently pursuing its existing case against the defendant," including by "engaging in substantial discovery."  *United States v. Bikundi*, 73 F. Supp. 3d 51, 56 (D.D.C. 2014).  Rather, he recognizes that discovery in this case is exceptionally voluminous and "will require an extensive amount of time for both the defendant and [his] counsel to properly review."  Def.'s Mot. to Reconsider at 10.

Although it is possible for pretrial detention to become "excessively prolonged," and therefore unconstitutionally "punitive,"  *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987), length of detention alone is not dispositive and "will rarely by itself offend due process," particularly in a "complex case,"  *United States v. El Hage*, 213 F.3d 74, 79 (2d Cir. 2000); *see Sharps v. United States*, 246 A.3d 1141, 1157-58 n.89 (D.C. 2021) (collecting cases holding that twenty to fifty-two months of pretrial detention did not violate due process).  Courts also consider the extent of the prosecution's responsibility for delay of the trial, the gravity of the charges, and the strength of the evidence upon which detention was based.  *See El Hage*, 213 F.3d

at 79.  Taking these factors into consideration, Defendant Caldwell has not demonstrated that the length of his detention has become unconstitutionally excessive.  He does not claim that the prosecution is to blame for the delay; he does not dispute that he faces serious charges; and he does not contest that the weight of the evidence against him is strong.  Taking these factors in consideration,  Defendant Caldwell has not demonstrated that any "delays" in setting a trial date offend his due process rights or require him to be released from pretrial detention.

### 2.  Conditions of Confinement

Defendant Caldwell next argues that his "current detention conditions further support release," as he claims they are "deplorable, "violate his basic civil rights," and  "raise[ ] serious concerns about his 8th Amendment protections against cruel and unusual punishment."  Def.'s Mot. to Reconsider at 12.  He claims, for example, that he is on "lockdown" for intermittent 25-hour periods, "denied adequate nutrition and access to personal hygiene items," and "subjected to threats of physical harm from other inmates and guards."  *Id.* at 13.  He also claims that he was "exposed to tear gas" released in his unit on November 11, 2021.  *Id.*  In response, the Government argues that the Bail Reform Act does not include prison conditions as a factor to consider whether pretrial detention is appropriate, and that a defendant's challenges to his conditions of confinement are properly raised in a separate civil suit, and cannot be the basis for release in an underlying criminal action.  *See* Gov.'s Opp'n to Def.'s Mot. to Reconsider at 18–19 (citing cases).

To be sure, the Court is aware of and concerned by the conditions at the Central Detention Facility ("CDF") recently reported by the United States Marshals Service, which have prompted transfer of certain inmates to a separate facility.  *See* Def.'s Mot. to Reconsider at 12.  The Court notes, however, that Defendant Caldwell indicates that he is presently detained at the Central

Treatment Facility ("CTF"), which does not appear to have the same issues.[4]  In any event, the Court agrees with the Government's position that Defendant Caldwell has failed to establish that any such conditions supply a basis for his release from detention.

### 3.  Proposed Conditions of Release

Defendant Caldwell further claims that a "suitable third-party custodian" not previously considered by the Court or by the magistrate judge is now available.  This newly proposed third-party custodian is Defendant Caldwell's step-mother.  Def.'s Mot. to Reconsider at 13–14.  But Defendant Caldwell offers little information as to why this person is a suitable third-party custodian, explaining only that she is   "free of any criminal history," "maintains a stable residence," and is "willing to execute the requirements of a third-party custodian."  *Id.* at 14. Neither Defendant Caldwell—nor the proposed third-party custodian herself[5]—addresses the Court's earlier concern that it could not rely on family-member custodians to "report potential violations."  *See* Mem. Op. at 25.

To the extent Defendant Caldwell seeks to reopen his detention hearing to enable further examination of this individual, he is not entitled to do so under § 3142(f) because the existence of this person was known to him at the time of his detention hearing.  *See* 18 U.S.C. § 3142(f)(2) (requiring movant to proffer information that was "not known to the movant at the time of the hearing"); Def.'s Mot. to Reconsider at 14 (describing 40-year relationship with newly proposed third-party custodian). And absent any details about this individual's suitability as a third-party

---

[4] *See* Press Release, U.S. Marshals Service, Statement by U.S. Marshals Service Re: Recent Inspection of D.C. Jail Facilities (Nov. 2, 2021), https://www.usmarshals.gov/news/ chron/2021/110221b.htm ("The U.S. Marshal's inspection of CTF did not identify conditions that would necessitate the transfer of inmates from that facility at this time[.]").

[5] *See* Def.'s Ex. 3, Letter dated October 7, 2021.  Defendant Caldwell has provided a letter from someone who is married to the defendant's father.  Although the letter attests to Defendant Caldwell's character and role as a father, it includes no information about the author's suitability as a potential third-party custodian.

custodian, the Court cannot make a finding that her "availability" has any "*material bearing* on the issue whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(f)(2) (emphasis added).

As a final point, Defendant Caldwell contends that the Court was previously "erroneously advised" about the lack of GPS monitoring in the Eastern District of Texas.  *See* Def.'s Mot. to Reconsider Reply at 4.  He claims that GPS monitoring is available in that jurisdiction (though he does not cite the source of such information).  However, the Court again contacted the U.S. Probation Office, which once again informed the Court that the Eastern District of Texas's location monitoring capability is limited to "radio frequency" ("RF") technology.  *See* Mem. Op. at 24–25.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Caldwell's motion for reconsideration of his pretrial detention order.  An appropriate Order accompanies this Memorandum Opinion.

**Dated:** January 19, 2022

         /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge