UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

                            21-CR-00181

v.

DANIEL RAY CALDWELL.
    Defendant.

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Pursuant to Section 6A1.2 of the *Federal Sentencing Guidelines* the defendant, DANIEL RAY CALDWELL, comes now and submits the following:

**I.   Objections to Presentence Report**

Mr. Caldwell does not object to any fact or factor which would impact the calculation of the appropriate advisory federal sentencing guideline. Further, he does not object to any of the factual assertions in the report.

**II.   Sentencing Factors**

A sentencing court is required to consider the guidelines ranges, *see* 18 U.S.C.A 3553(a)(4)(Supp. 2004), but is permitted to tailor the sentence in light of other statutory concerns as well. Specifically, 18 USC 3553(a) notes:

> The court shall impose a sentence **sufficient, but not greater than necessary,** to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>     (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
>     (2)    the need for the sentence imposed—
>         (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>         (B)    to afford adequate deterrence to criminal conduct;
>         (C)    to protect the public from further crimes of the defendant; and
>         (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

1

(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for—
   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or
   (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

The Supreme Court has described the process for imposing a sentence under the advisory sentencing guidelines as follows:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable [United States Sentencing] Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] §3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance…[A] major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Gall v. United States,* 128 S.Ct. 586, 596-97 (2007)(citations and footnote omitted; *see also Kimbrough v. United States*, 128 S.Ct. 558, 569-70 (2007).

### A. Advisory Sentencing Guidelines

This Honorable Court must consider the advisory sentencing guidelines. The Supreme Court has held that when sentencing, a court must demonstrate that it "considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decision making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). " "[A] perfunctory recitation of the defendant's arguments or the § 3553(a) factors without application to the defendant being sentenced does not demonstrate reasoned decision making or provide an adequate basis for appellate review." *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017) (internal quotation marks omitted).Further, the district court must provide some individualized assessment "justifying the sentence imposed and rejection of arguments for a higher or lower sentence based on § 3553." *United States v. Lynn*, 592 F.3d 572, 584 (4th Cir. 2010). A district court must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why he has rejected those arguments. *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017); *Slappy*, 872 F.3d 202, 207 (4th Cir. 2017) (internal citation and quotation marks omitted).

An individualized assessment requires "that district courts consider the defendant's non-frivolous arguments for a downward departure, impose an individualized sentence based on the characteristics of the defendant and the facts of the case, and explain the sentence chosen." *Id.* A "'sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority'" by articulating how the sentencing factors apply to the case before it. *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) (quoting *Rita*, 551 U.S. at 356).

B. § 3553(a) Sentencing Factors

In addition to considering the advisory sentencing range recommended under the federal sentencing guidelines, and statutory restrictions this Honorable Court must also consider the sentencing factors set forth in § 3553(a). The defendant submits an application of these factors to the case at bar leads to the conclusion that a sentence within the advisory guideline range (63-78 months) would be greater than necessary. Specifically, in light of Mr. Caldwell's history and characteristics, role in the offense, and need to deter we submit a sentence of 48 months followed by a period of supervised release would be sufficient but not greater than necessary.

1. History and Characteristics of Mr. Caldwell

The presentence investigative report summarizes Mr. Caldwell's background. Mr. Caldwell's history and characteristics have been further documented in previous court filings. He is a native of the State of Texas and the father of three children. At the time of his arrest he maintained a stable residence and was gainfully employed. Although this is not his first contact with the criminal justice system, his criminal record is anything but significant. His only convictions are for minor or misdemeanor offenses. He is not a convicted felon. He is a criminal history category I, the lowest category under the United States Sentencing Guidelines.

Although the government may wish to portray Mr. Caldwell as an unstable individual who represents a danger to the community the reality is that nothing can be further from the truth. Instead, Mr. Caldwell is a middle-aged man who served this country in the United States Marine





Corp. He is a disabled veteran. As the attached letters of support demonstrate, Mr. Caldwell is actively involved in the lives of his children. (letters of support). The attached letters speak also to the damage he has done as a result of his actions on January 6. As his step-mother writes:

> I pray you will take into regard that the last two years of life in confinement have made him take a long look at how his choices affected himself, and his family. And I also plead with you to see what it has been for his family.

*See* Exhibit 1.

She further writes, "Dan is aware of all of this and it tears at his core. He knows he messed up a lot of lives and I know he would take it all back, if he could. But, he can't." *Id.*

5

While in the military is received numerous service recognitions.  *See* Exhibit 3 (military merit certificates).  His service to this country is representative of his family's long-time commitment and sacrifice.  As his father writes to the Court:

> Dan comes from a family that has served this country in every branch of military service and every war this nation has faced.  He was born while I was doing my tour in the Vietnam War.  In his own heart he knows the value of honor to this country, him being a veteran himself- serving with the United States Marine Corp.

*See* Exhibit 3.



In previous proceedings, the government has attacked Mr. Caldwell's character by suggesting that he is a racist who arrived at the U.S. Capitol on January 6, 2021, with the intent to storm the building.  As with other unfounded allegations lodged against Mr. Caldwell this narrative is equally false.  He is not a racist and holds no ill will towards any race or creed.

In summary, Mr. Caldwell is a proud disabled military veteran who is blessed with a strong loving family.  The events of January 6 do not define him as a person.  In contrast to the balance of his life it represents an abnormality. One day of poor judgment does not outweigh years of

service to country, hard work, and devotion to family.  Mr. Caldwell prays that this Honorable Court takes this factor into account in fashioning an appropriate sentence in this matter.

### 2. Nature of the Offense and Mr. Caldwell's Role

Mr. Caldwell acknowledges the nature of the offense.  He entered a plea of guilty and embraced the statement of offense filed in conjunction with his plea agreement with the government.  The events of January 6, 2021 were disturbing to our nation.  Mr. Caldwell understands that he unfortunately played a role in the events.  He regrets his behavior.

Mr. Caldwell, like millions of Americans, became convinced that the results of the 2020 presidential elections were the result of fraud.  This belief was fueled by Congressional leaders and the President of the United States.  Mr. Caldwell's original intent was to simply attend the demonstration at the United States Capitol.  It was not to participate in a violent attack on the Capitol.  He was not a part of any organized pre-planning to attack the Capitol.

On January 6, 2021 Mr. Caldwell, along with nearly 40,000 other participants, at the direction of President Donald J. Trump went to the Capitol.  This Honorable Court is all too familiar with what would soon follow.  It is noteworthy that Mr. Caldwell did not participate in the physical breach of the Capitol.  He entered the Capitol after others had caused the breach.  Once in the Capitol Mr. Caldwell is not charged with assaulting anyone.  His activity inside of the Capitol was limited to taking photographs and a video.

Of course, Mr. Caldwell cannot escape the fact that he discharged an aerosol in the direction of law enforcement.  His actions were an emotional response to the chaotic events of the day.  It is undisputed that prior to Mr. Caldwell's spraying law enforcement the scene at the Capitol

had begun to break down. The crowd's agitation of law enforcement had reached its height. In an effort to bring the crowd under control law enforcement began to employ anti-riot actions. These actions included deploying tear gas and firing rubber bullets. Several of the rubber bullets struck protesters. Mr. Caldwell was one of the individuals impacted by both the tear gas and rubber bullets. He sustained a significant injury to his leg after being shot by law enforcement attempting to control the crowd.



Notwithstanding his injuries, Mr. Caldwell actions were wrong. He acted in a criminal manner. He understands this fully. He entered a guilty plea and fully acknowledges this fact. Nevertheless, he submits it is significant to note the totality of the atmosphere at the time of his actions. Mr. Caldwell admits he allowed his emotions to govern him on that day. He further understands that he must be held accountable for his actions.

As a consequence of his actions, law enforcement officers were subjected to harm. The affects of the spray caused injury to several officers. However, it should be noted that none of the officers suffered any long-term adverse consequences. While this fortunate occurrence does not absolve Mr. Caldwell of criminal responsibility it negates any suggested aggravating nature of the offense.

### 3. Need to Deter Mr. Caldwell and Others

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." Id.; see also Zvi D. Gabbay, Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. See Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. *Id*. at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id*. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." *Id*. at 2. The report concluded that "the studies reviewed do not provide a basis for

9

inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id*. at 1. Research regarding white collar offenders in particular (presumably the most rational of potential offenders) found no difference in the deterrent effect of probation and that of imprisonment. *See* David Weisburd et al., Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes, 33 Criminology 587 (1995); see also Gabbay, supra, at 448-49 ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."). According to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science, 91 Prison J. 48S, 50S-51S (2011).

Mr. Caldwell has spent nearly two years incarcerated as a result of his actions on January 6. The length of his pre-trial detention and the conditions under which he has been forced to endure during this period are significant consequences. The question before this Honorable Court now is whether a lengthier period of incarceration is "necessary."

As this Court knows, January 6 detainees have been housed in a special unit. For much of his incarceration Mr. Caldwell has endured lockdowns for intermittent 24-hour periods. These periods have involved Mr. Caldwell being confined to his cell for 19 hours at a time. At the conclusion of such periods he is released into the unit for 5 hours before being required to return to lockdown for another 19 hour period. He has been denied adequate nutrition and access to personal hygiene items. He has been subjected to threats of physical harm from other inmates and guards.

His incarceration has coincided with the COVID-19 pandemic. This has only contributed to the unusually harsh conditions of his pre-trial detention. The necessary precautions to mitigate the

10

spread of the virus has resulted in the elimination of rehabilitation programs available to detainees. It resulted in significant limitations on Mr. Caldwell's ability to maintain contact with his family. As a consequence, the stress and resulting mental anguish have only added to the consequences of his actions on January 6.

The conditions of his confinement do not excuse Mr. Caldwell's actions.  However, in evaluating the extent of the consequences of his actions have already had on Mr. Caldwell we submit they are relevant.  The significant consequences support the conclusion that the need to deter Mr. Caldwell has already been adequately addressed.

This Honorable Court must not only be concerned with specific deterrence but also deterring others from repeating similar acts.  In evaluating this factor it is proper to access not only the impact of incarceration but also the post-release effects on the lives of those like Mr. Caldwell convicted of criminal acts resulting from January 6.  Each such defendant will forever be branded a felon.  The shame and embarrassment will reside with them well after any prison sentence is served.  The negative attention brought to their families will not abate for the foreseeable future. Few in our society would welcome such notoriety. It is enough to deter anyone.

### C. Recommended Sentence

#### 1. Period of Incarceration

Mr. Caldwell submits a sentence within the advisory guideline range would be greater than necessary.  In the alternative, he submits a sentence of 48 months of incarceration followed by a period of supervised release would satisfy the legitimate goals of sentencing.  Such a sentence would adequately punish his conduct while acknowledging his prior exemplary military service to this country.  It would acknowledge the significant consequences Mr. Caldwell and his family have already suffered as a result of his conduct. It would further acknowledge the fact that his

11

actions did not result in any long-term injuries to anyone. And finally, such a sentence would recognize Mr. Caldwell's acceptance of responsibility and remorse for his actions.

2. Facility Designation

Further, in light of Mr. Caldwell further requests that the Court include in the judgement and commitment order that he be designated to serve the balance of any sentence imposed at Fort Worth FMC. In the alternative, he requests that the Court recommend that he be designated to FCI Sengoville or FCI Texarkana.

3. Supervised Release Conditions

The presentence report documents Mr. Caldwell medical and mental health conditions. In light of these conditions he requests that this Honorable Court include a requirement that he participate in mental health counseling as directed by the United States Probation Department while on supervised release.

4. Fine

As the presentence report indicates, Mr. Caldwell is without sufficient means to address any fine which may be imposed in this matter. He is currently unemployed. He has been detained since February 10, 2021. In light of these factors, Mr. Caldwell requests that this Honorable Court decline to order that he satisfy any fine in this matter.

**III. Conclusion**

Wherefore the defendant, **DANIEL RAY CALDWELL**, respectfully requests that this Honorable Court sentence to a period of 48 months of incarceration followed by a period of supervised release.

I ASK FOR THIS:

_____/s/_____
Robert L. Jenkins, Jr., Esq.
United States District Court Bar No.: CO0003
Bynum & Jenkins Law
1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant DANIEL RAY CALDWELL

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and accurate copy of the foregoing to be served upon all counsel of record via ECF on January 18, 2023.

_____/s/_____
Robert L. Jenkins, Jr., Esq.
United States District Court Bar No.: CO0003
Bynum & Jenkins Law
1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant DANIEL RAY CALDWELL